UNITED STATES HOFFMAN CO. v. BECKER & WADE CO.

BECKER & WADE CO. v. UNITED STATES HOFFMAN CO.

(Circuit Court of Appeals, Seventh Circuit. January 5, 1915.)

Nos. 1924, 1928.

PATENTS ☞328—VALIDITY AND INFRINGEMENT—GARMENT-PRESSING MACHINE.
    The Hoffman patent, No. 928,199, for a garment-pressing machine, held not anticipated, valid, and infringed as to all of its 16 claims; Nos. 1 to 7, inclusive, and No. 16, being broad claims, and Nos. 8 to 15, inclusive, specific claims.

Appeals from the District Court of the United States for the Eastern Division of the Northern District of Illinois; Kenesaw M. Landis, Judge.

Suit in equity by the United States Hoffman Company against the Becker & Wade Company. Decree in part for complainant, and both parties appeal. Reversed on complainant's appeal, and affirmed on defendant's appeal.

F. W. Cameron, of Albany, N. Y., and Edward Rector, of Chicago, Ill., for complainant.

Charles C. Bulkley, of Chicago, Ill., for defendant.

Before BAKER, SEAMAN, and KOHLSAAT, Circuit Judges.

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

KOHLSAAT, Circuit Judge.  Appellant, United States Hoffman Company, brought suit in the District Court against appellee, the Becker & Wade Company, for infringement of the 16 claims of the A. J. Hoffman patent, No. 928,199, granted July 13, 1909, for improvements in clothes-pressing apparatus.  Such proceedings were thereafter had in said cause that the District Court found and decreed that claims 1, 2, 3, 4, 5, 6, 7, and 16 were invalid, and that claims 8, 9, 10, 11, 12, 13, 14, and 15 were valid and infringed.  Appellant brings to this court so much of said decree as holds claims 1 to 7 and 16 to be invalid, while appellee brings up by cross-appeal the part of said decree which declares said claims 8 to 15, inclusive, to be valid and infringed; thus all the claims are before us.

Claims 1 to 7 and 16 will be herein termed the broad claims, and claims 8 to 15 will be designated the narrow claims.  The broad claims are in substance stated in claim 4 which reads as follows, viz.:

"In a garment-pressing machine, a supporting bed for the garment, a superposed presser head permanently associated with and movable toward and from the upper face of the bed and fixed from endwise movement relatively thereto, said presser head having a steam chamber and a perforated metal plate extending across the bottom of the steam chamber, a foraminous press cloth covering the bottom of the perforated plate, means for moving the head toward and from the bed, and means for introducing steam into the steam chamber and through the perforated plate and press cloth while the head is in its pressing position."

The narrow claims have to do mainly with superheating mechanism.  The device of the patent is designed for pressing clothes, and especially used by tailors as a substitute for the immemorial sadiron or goose.  The Hoffman presser consists of a presser block, otherwise termed a "buck," which supports the garment to be pressed.  Hinged above this is a presser head movably mounted with respect to the presser block, which is stationary.  The lower face of this presser head is provided with a perforated plate coextensive therewith.  This head is hollow, and contains means for letting steam into the head, also superheating burners and a deflector, dividing the hollow presser head into an upper and lower chamber.  As it enters the lower chamber, the steam is superheated by the burners until the contained steam has become heated and the moisture reduced to the desired degree.  By means of the deflector and the upper and lower chambers, the steam is applied indirectly and diffused under varying pressure through the perforated, cloth-covered lower face plate of the head to the cloth to be pressed.  The mechanical pressure of the head upon the presser block is effected by means of a foot lever.  It is claimed, that in passing from the lower chamber, what remains of the moisture is extracted from the steam by the cloth covering of the perforated plate, and is communicated from that cloth to the top surface of the thing to be pressed.

From the evidence it appears that the Hoffman presser has gone into very general use.  While differing in some respects from the detail of construction of the presser in suit, appellee's device in substance appropriates the essential features of Hoffman's broad claims, and is the same in general arrangement and operation.  It has the stationary

presser platform, the superimposed movable heated presser head, means for introducing and supplying steam to the cloth to be pressed, and means for the application of the mechanical pressure by the use of a foot lever. Unless the broad claims are found to be invalid, appellee must be held to be an infringer.

The principal alleged anticipation of the prior art in evidence—indeed, the only one that need be here considered—is that of German patent, No. 59,423, granted to A. Bossen May 5, 1891, for a steam pressing apparatus. In this device, the perforated steam supplying plate is located on the upper surface of the under or block member of the presser, so that steam is supplied from beneath. The movable superimposed presser head is steam-heated, but has no foraminous plate, and brings only pressure and heat to the pressing process. It is claimed by appellant that the result attained by it is new, and makes a departure from Bossen, and that its device is not to be dealt with as a mere reversal of parts as compared with Bossen; that by the Bossen device, when steam is applied to the article to be pressed, from below, that article is saturated, and that, if dried out at all, considerable time is taken by the operation; that the heated presser head is applied to the upper side of the article pressed and that the desired result, so far as pressing clothes is concerned, is not attained, whereas by his own device the operation is practically momentary, the moisture and heat being applied at the same time, and that when the face of the presser head is lifted it leaves the garment dry, while the nap of the goods is lifted and restored to normal by the upward lift of the escaping steam.

The patent was before the Circuit Court of Appeals for the Sixth Circuit in Grever v. United States Hoffman Company, 202 Fed. 923, 121 C. C. A. 281, where it was sustained. It was the theory of the primary examiner, in passing upon the Hoffman application, that there was no patentable novelty in constituting the upper swinging member a steaming member, instead of making the lower or stationary member the steaming member, as in Bossen, and he thereupon rejected all of the so-called broad claims. The examiners in chief, on appeal, reversed the primary examiner and allowed those claims, giving their reasons in the following language:

"We regard the appealed claims as allowable, for the reason that in none of the patents cited by the examiner is there revealed a superposed presser head movable toward and from the bed of a garment-pressing machine and having a steam chamber which is adapted to moisten and soften the nap of a fabric without penetrating the body of the fabric. The patent to Bossen discloses a machine for pressing garments in which the steam emerges from the bed of the machine, and, as pointed out by appellant, must pass entirely through the body of the fabric before the nap can be moistened. Appellant's object could not be attained by the use of this machine. The patents to Bainka and Wassertheurer disclose ironing machines in which the steam delivering and pressing elements are movable, not toward and from the bed of the machine, but to and fro across the surface of a garment resting upon the bed. These devices are in no sense presses, and, as indicated by the appellant in his brief, will produce a rubbing contact which would seriously affect the condition of the nap."

It is well settled that, unless some new and patentable result is attained by the reversal of the members of a patented device, the change

does not amount to invention. The device of Bossen was intended, as stated in the specification, for "pressing ladies' plain and pleated garments, skirts, coats, etc., without being ripped apart, for the purpose of removing creases due to dyeing or cleaning in dye houses or chemical cleaning establishments." The steam is allowed to flow upward through the perforations of the upper face plate of the lower member of the presser into the garment to be pressed for about a minute. Then the heated presser head is lowered onto the saturated garment and allowed to remain thereon for three or four minutes. As a result, the garment is not freed from moisture by the process, but is hung up to dry.

From the evidence, it appears that in the use of the device in suit the steam and the pressure of the heated presser head are simultaneously applied to the upper surface of the garment, and then only for a fraction of a second; the object in Hoffman's device being to press the upper surface of the goods as the same is dampened by the steam, which latter, he insists, is, by the time of the fall of the presser head, gathered substantially in the cloth covering of the lower foraminous plate of the head, as above stated. The testimony fails to show that in Bossen's case the upper surface becomes sufficiently or only so moist as to make the pressure effective. One of the advantages which seems to be established by the evidence, and which was asserted by the patentee in his argument in the Patent Office, is that the natural tendency of the steam to escape upward raises the softened nap of the goods after the head is lifted, "the rapidity of evaporation serving to instantly dry such nap, leaving the pressed garment in a dry condition immediately after the raising of the press head, so that such garment may be put on and worn with perfect safety directly from the press." (File wrapper, p. 107.)

The device of the broad claims of the patent in suit produces such a coaction of the several parts of the presser as, independently of the special matter of the so-called narrow claims, brings about a new and meritorious result, and gives to the conception by Hoffman of the transference of the perforated steam applying plate from the upper face of the lower or presser block, as in Bossen, to the under face of the superimposed movable presser head, the dignity of invention, especially when considered in connection with the marked success which has attended the commercial promotion thereof and the patentee's long and victorious struggle in the Patent Office. This being so, we find, as above stated, that appellee's device infringes the broad claims.

The so-called specific claims, Nos. 8 to 15, inclusive, cover a device in which the superheating of the steam is accomplished by the use of a deflector so arranged as to embrace the dome with burners which direct their flames against the base of the dome opposite the contracted steam passage formed between the deflector and dome, through which the steam passes in a thin sheet to be most effectively subjected to the heat of the burners. Concerning these claims, appellee's expert, Mr. Carter, says that they, "limited, as they are, to substantially this particular construction, are not disclosed in any of the patents of the prior art to which my attention has been called."

We are of the opinion from the record that these narrow claims disclose invention of a degree which entitles the patent to a fair range of equivalents, such as are hereinafter set out. Claim 8, which may be taken as fairly representative of the so-called narrow claims, reads as follows, viz.:

"In combination with an elongated press block, a hollow elongated press head, an elongated dome on said head spaced from the edges thereof, a perforated face plate carried by said head, a deflector in the head dividing the same into a pair of chambers, said deflector being spaced from the side walls of the dome to form a passage connecting said chambers, burners carried by the head and embracing said dome, said burners being disposed so as to direct the flame against said head, and means for supplying steam to the head."

This claim calls for (1) an elongated press block; (2) a hollow elongated press head; (3) an elongated dome on said head; (4) a perforated space plate; (5) a deflector, dividing the head into an upper and lower chamber, and which is spaced from the side of the dome to form a connecting passage between the chambers; (6) burners embracing the dome, so arranged as to direct the flame against the base of the dome, and especially the narrow space leading from the upper to the lower chamber; (7) means for supplying steam to the head. The claim is limited to a device in which, to quote the testimony of appellee's expert, "the press head has its interior divided by a deflector into upper and lower chambers, which communicate with each other through the narrow passage left around the margin of the deflector by making it slightly smaller than the interior of the dome, with burners embracing the dome so as to direct their flames against the base of the dome throughout its circumference and directly opposite the narrow steam passage formed between the walls of the dome and the edges of the deflector; the purpose of these co-operating elements being to divide the steam into a thin sheet and subject it to the intensity of the flame at the point where it is so divided, so as to superheat it most effectively." Substantially all the elements above noted, except Nos. 5 and 6, are conceded to be present in appellee's device.

As to the deflector, appellee insists the alleged infringing device has none. It does have, however, a very considerable enlargement of the steam supply pipe—so large, indeed, as to constitute practically an upper expanding chamber into which the steam flows, and, of course, expands. Its impetus toward the foraminous plate is checked by the walls of the chamber. It then rises to the upper part of the dome and escapes through narrow passages to the lower chamber, where it again expands and passes through the foraminous plate as required to assist in the pressing process. While passing through the narrow conducting space between the two chambers, it is subjected to the heat of burners and becomes superheated, as is provided in the patent in suit. Appellee asserts that the steam, after leaving the upper chamber, is driven in a practically controlled stream upon the foraminous plate, and thereby fails entirely to perform the diffusing function assigned to the Hoffman opening between the two chambers. There is no satisfactory evidence to show that the steam, in the alleged infringing device, is projected with any force into the lower chamber or against the perforated plate. As the steam of the upper chamber is expanded and super-

heated, it would, naturally, and does, enter the lower chamber in a condition suitable to cause it to again expand and fill the latter, thereby causing it to be projected with uniform pressure upon the whole foraminous face of the presser. The enlarged section of the supply pipe, appellee contends, acts simply to gather the water caused by condensation of the steam, so that it may by action of the superheating means, as well as the steam, be reconverted into steam. This contention does not appeal to us. We regard the chamber caused by enlarging the supply pipe as the equivalent of the upper chamber of Hoffman, and that part of the wall of the enlarged portion of the pipe which directly opposes the steam intake as the equivalent of Hoffman's deflector. The same thought prevails in both devices. Appellee's burners are applied, just as Hoffman's, to the stream of steam when it is most attenuated and most easily superheated. We are impressed with the idea that appellee has employed all the essential principles and features of both the broad and the narrow claims of Hoffman, in practically the same arrangement thereof, ingeniously disguised, but detectable, and is therefore guilty of infringement as charged in the bill.

The decree of the District Court as to the so-called broad claims is reversed, with direction to grant the injunctional and other relief asked. As to the so-called narrow claims, the decree of the District Court is affirmed.